**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GEORGE LEON WILLIAMS, JR.** | ) | |
| **ID # 1745723,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:16-CV-1923-D (BH)** |
| | ) | |
| **LORIE DAVIS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent,** | ) | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

George Leon Williams, Jr. (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed separate petitions for writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for compelling prostitution of a child under the age of seventeen. The respondent is Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent).

### A.    <u>State Court Proceedings</u>

Petitioner was indicted for compelling prostitution of a child under the age of seventeen in Cause Nos. F08-62218 and F10-00781 in the 291st District Court of Dallas County, Texas.[1]  (*See*

---

[1] Petitioner was also charged with child pornography in Cause Nos. F10-58269 and F10-58270, but those cases were later dismissed.  (*See* docs. 19-3 at 4; 19-37 at 55-56.)

docs. 19-1 at 9; 19-15 at 5.)[2] The State alleged a prior conviction for enhancement in the first case. He pleaded not guilty, and the two cases were tried together before a jury on September 6-9, 2011.

On May 1, 2008, Dallas police officers went to an apartment building in response to a complaint that prostitution was occurring in a particular apartment. The officers spoke with the property manager, who told them that Petitioner lived in that apartment. The officers went to the apartment, knocked on the door, and spoke with the woman who answered the door. She was about nineteen or twenty years old. Petitioner was not there at the time. The woman allowed the officers to enter the apartment, and inside were two females who appeared to be about fifteen or sixteen years old. The woman who answered the door was in charge of the younger girls.

The officers saw indications of sexual activity in the apartment. There was a mattress on the floor in the front room, a sexual device in plain view in a back room, and condoms in the back room. An officer explained that it is common for extra mattresses to be set up that way for prostitution. There were crates that contained clothing and personal items, and based on his experience, the officer thought that the crates indicated that the apartment was a place for runaways.

A detective interviewed the two younger girls at a juvenile facility. He testified that "[b]oth girls indicated that they were brought into the prostitution game" by Petitioner, who was also known as "Selfish." The girls knew Petitioner's full name and where he lived, and they identified him in a photo. They gave written statements.

One of the girls testified that she was fifteen years old when she met Petitioner, but that she told him she was eighteen. He told her that prostitution was a way to make money. He instructed her about prostitution and bought her clothes that were kept at Petitioner's apartment. He gave her

---

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

a cell phone and paid for an ad for people to call her. She gave Petitioner the money she was paid from customers, and he then gave her some of that money. When the police came to the apartment, she did not answer their questions about prostitution. She said that she lied and told them that she was there spending the night with the older girl because she did not want Petitioner to get in trouble. She thought that if he got in trouble, they would also be in trouble for prostitution. She admitted that she also lied about Petitioner's name and that she made up a nickname for Petitioner because she did not want to give the detective his real name. She also acknowledged that other things in her written statement were not true, but stated that she put them in her statement because she was afraid of being charged with prostitution.

The other young girl testified that when she met Petitioner through the other young girl, he gave her instructions on how to make money through prostitution. He bought her clothes and jewelry and paid to have her hair and nails fixed. She gave Petitioner the money she collected from prostitution and stayed at his apartment. She testified that she felt ashamed, guilty, and overwhelmed the day the police came. She admitted that she lied about her age and was uncooperative when the police came to the apartment because she was afraid she could be charged with prostitution and for being a runaway. She admitted to prostituting herself even though she knew she could get in trouble.

A police sergeant testified that he had investigated child sexual abuse cases for twenty years and explained how "trafficking of children works." He said that there is a misconception that the children are "willing participants" and "they freely choose to get into this." Based on his experience, children "do not willingly choose to be involved in prostitution." This was his "personal belief," even if the child testified she was a willing participant. The main reasons a child gets

3

involved in prostitution are because he or she wants love, affection, attention, and a sense of belonging. The children are generally from dysfunctional homes and are chronic runaways that may have been physically or sexually abused, or have other problems at home.

The sergeant explained that when he interviewed a child involved in prostitution, he started with the notion that the child was being deceptive and avoiding his questions, and that the child had been coached not to talk about it. He also explained that it is common for girls involved in prostitution to protect the pimp, and that "denial is the first level" of that protection. He stated that they lied to get out of trouble. He said that it is difficult for children to admit to prostitution because they are ashamed. *See Williams v. State*, Nos. 05–11–01729–CR and 05–12–00007–CR, 2013 WL 3974045 (Tex. App. – Dallas Aug. 2, 2013).

Petitioner was convicted of compelling prostitution of a child under seventeen years old in each case. He was sentenced to life imprisonment in Cause No. F08-62218 and 20 years' imprisonment in Cause No. F10-00781. (*See* docs. 19-1 at 35; 19-15 at 75.) The judgments were affirmed on appeal. *See Williams*, 2013 WL 3974045. The Texas Court of Criminal Appeals refused his petition for discretionary review. *See Williams v. State*, PD-1213-13 (Tex Crim. App. Jan. 15, 2014). Petitioner's state habeas applications were signed on August 31, 2014, and received by the court on October 6, 2014. (*See* docs. 19-38 at 6, 20; 19-53 at 6, 20.) On April 6, 2016, they were denied without written order on the findings of the trial court. (Docs. 19-23; 19-40); *see Ex parte Williams*, WR-49,062-03, WR-49,062-04 (Tex. Crim. App. Apr. 6, 2016).

**B.    Substantive Claims**

Petitioner filed separate federal habeas petitions, signed on May 20, 2016, and June 1, 2016, and they were subsequently consolidated. (Docs. 3, 6, 7; *see also* No. 3:16-CV-1924-D.) He raises

4

the following grounds[2]:

    (1) Counsel was ineffective because he:

        (a) failed to challenge the search warrant and a backdated affidavit in support of the search warrant, failed to request a *Franks* hearing, and allowed the court to sever the motion to suppress;

        (b) failed to object to the introduction of evidence that was previously excluded;

        (c) failed to hold the State to its burden of proof;

        (d) failed to object or impeach the detective for committing perjury;

        (e) failed to challenge the complainants' testimony;

        (f) failed to prepare for trial by not communicating with Petitioner;

        (g) failed to prepare by not investigating and challenging the indictment;

        (h) failed to present witnesses;

    (2) Petitioner was forced to have an all-white jury when the court and counsel overlooked his request for a jury shuffle;

    (3) The indictment in No. F08-62218 was defective, resulting in prosecutorial misconduct and an abuse of discretion by the trial court;

    (4) The court lacked jurisdiction because it operated as court of admiralty or maritime jurisdiction;

    (5) The prosecutor failed to follow and apply the law because the prosecutor:

        (a) suborned perjury;

        (b) used excluded evidence;

        (c) introduced evidence of an extraneous offense.

    (6) Counsel on appeal was ineffective because he failed to raise an issue about:

---

[2] Although Petitioner raised separate claims in his two federal petitions challenging separate convictions, many of those claims apply to both convictions.

(a) the denial of a jury shuffle;

(b) the defective indictment;

(c) the detective's perjury;

(d) failed to raise an issue about the court's severance of the motion to suppress.

(7) The evidence was insufficient to prove that Petitioner knew that the complainants were under seventeen years old.

(*See* docs. 3, 4, 7, 8, 15.)  Respondent filed a response on November 23, 2016.  (Doc. 20.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.  INDICTMENT

Petitioner contends that the indictment in No. F08-62218 was defective because it did not

7

have a state seal or date and was not signed by the District Attorney, and that it was not presented by a grand jury. He alleges that an indictment in No. F08-62218 against his brother, "George Leon Williams III," was dismissed on January 5, 2009, and an indictment against him as "George Leon Williams, Jr." could not have been presented on January 6, 2009, within 72 hours of his arrest. He alleges prosecutorial misconduct and abuse of discretion by the trial court because the indictment was defective.

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985); *see also McKay v. Collins*, 12 F.3d 66, 68–69 (5th Cir. 1994) ("sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the state indictment is so defective that it deprives the state court of jurisdiction"). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Under Texas law, all that is required for jurisdiction is the presentment of the indictment to the court. *McKay*, 12 F.3d at 69 (noting that a defect in substance in an indictment does not deprive a state trial court of jurisdiction) (citing *Moreno v. Estelle*, 717 F.2d 171 (5th Cir. 1983)). An indictment must include "[t]he essential elements of the offense," but they need not be "expressed in any specific terms" to afford notice sufficient to satisfy constitutional requirements. *Id.* (citation omitted). Ultimately, "[a]n indictment should be found sufficient unless no reasonable construction

of the indictment would charge the offense for which the defendant has been convicted." *Id.* (citation omitted).

The state habeas court found that Petitioner's claims lacked merit, and the Court of Criminal Appeals denied the state habeas application on those findings. (*See* doc. 19-37 at 53.) The indictment in No. F08-62218 was signed by the District Attorney and the grand jury foreperson. (*See* doc. 19-15 at 5.) It names the defendant as "George Williams" and sets out his date of birth. Petitioner does not allege that the date of birth was not his, and he has not shown that he was not the person indicted. He has not shown that there is any requirement that the indictment be dated or include the state seal, and those are not listed as requisites of an indictment under Tex. Code Crim. Proc. art. 21.02. Nor has he explained how the alleged dismissal of a previous indictment against his brother had any effect on the indictment against him. He has not shown that the state court's rejection of his claim was unreasonable.

Petitioner has not shown that the indictment failed to invoke the court's jurisdiction. Because he has not shown that the indictment was defective, he has not shown that there was prosecutorial misconduct or an abuse of discretion by the trial court based on a defective indictment.

## IV. JURISDICTION

Petitioner contends that the trial court lacked jurisdiction because it operated as a court of admiralty or maritime jurisdiction. This type of claim has been characterized as legally frivolous, and it is not a basis for habeas relief. *See Dunham v. Davis*, No. 3:18-0179, 2018 WL 3213241, at *1 (S.D. Tex. June 29, 2018) (finding that to the extent the petitioner was seeking habeas relief on a "'sovereign citizen' defense to jurisdiction, such theories have 'no conceivable validity in American law'"); *Westfall v. Davis*, No. 7:18-CV-0023-O-BP, 2018 WL 2422058, at *2 (N.D. Tex.

May 4, 2018) (noting that courts routinely dismiss "sovereign citizen claims" grounded on maritime and admiralty law).

## V.  JURY SHUFFLE

Petitioner contends that counsel requested a jury shuffle in a pretrial motion, and it was brought up in a pretrial hearing on September 2, 2011, but the trial court never acted on the request. He asserts that the failure to grant a jury shuffle deprived him, as an African-American, of a fair cross-section of his peers in the jury panel because he was tried by an all-white jury.  Counsel did file a pretrial motion on May 18, 2011, requesting a jury shuffle, but the record does not show that the court ruled on the request.  (*See* doc. 19-15 at 59.)

Under Texas law, a defendant may demand that the names of the members of the jury panel assigned to a case be randomly selected to make up the order of the panel members on the jury list from which the jurors are selected.  *See* Tex. Code Crim. Proc. art. 35.11; *see also Harris v. Estelle*, 487 F.2d 1293, 1295 n.1 (5th Cir. 1974).  Although a jury shuffle is available under state law, it is not a federal constitutional right, and the denial of a motion for a jury shuffle is not a basis for habeas relief.  *See Harris*, 487 F.2d at 1296; *see also Johnson v. Quarterman*, No. 3:07-CV-1327-M, 2008 WL 2690285 at *7-8 (N.D. Tex. July 7, 2008) (denial of jury shuffle was a state-law matter and was not a basis for habeas relief).

Petitioner has not alleged or shown that the jury venire was selected on a racially discriminatory basis.  *Harris*, 487 F.2d at 1296 (petitioner was not entitled to relief for the denial of a jury shuffle where he did not allege that the jury venire was selected on a racially discriminatory basis).  Although he alleges that the jury was all white, the record does not show the racial composition of the jury or the panel.  *See Barley v. Stephens*, No. H-15-1529, 2016 WL 739848, at

10

*9 (S.D. Tex. Feb. 25, 2016) (petitioner who asserted counsel failed to request a jury shuffle was not entitled to relief on his conclusory allegation that his jury was all-white, where the record did not show the racial demographics of the panel or the sitting jurors). Without a showing that the jury venire was selected on a racially discriminatory basis, "shuffling the order of names on the venire could do no more than replace one potential juror with another whose constitutional impartiality toward the defendant was presumably the same." *Harris*, 487 F.2d at 1296. Petitioner has not shown that he was deprived of an impartial jury, or that the state court's rejection of this claim was unreasonable.

## VI. PROSECUTOR'S APPLICATION OF LAW

Petitioner contends that the prosecutor misapplied the law because she suborned perjury, used excluded evidence, and introduced evidence of an extraneous offense.[3]

### A. Perjury

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his

---

[3] Respondent argues that these claims are procedurally barred because Petitioner did not object at trial. A federal habeas court "will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991) (other citation omitted)). Under Texas' contemporaneous objection rule, a party must make "'a timely objection with specific grounds for the desired ruling'" in order to preserve an issue for appellate review. *Cubas v. Thaler*, 487 F. App'x 128, 130 (5th Cir. 2012) (quoting *Livingston v. Johnson*, 107 F.3d 297, 311 (5th Cir. 1997)). The Fifth Circuit has repeatedly held that a procedural default premised on the petitioner's failure to comply with the Texas contemporaneous objection rule constitutes an adequate and independent bar to federal habeas review. *See Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007) ("We have recognized a federal petitioner's failure to comply with the Texas contemporaneous objection rule as an adequate and independent state procedural barrier to federal habeas review") (citation omitted). The state habeas court did not deny the claims based on a failure to object, so the contemporaneous objection rule was not an independent and adequate state ground for denying the claims, and the claims are not procedurally barred.

constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) it was material. *Id*. at 271. A new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Id*.

Petitioner alleges that the detective testified that the complainants knew Petitioner's name and that they identified him from a photograph, but the complainants testified that they did not know his name until the detective told them, and one of the complainants testified that she did not sign the photo she was shown.

Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements or testimony of other witnesses do not establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). Conflicting testimony is to be resolved by the jury. *See Koch*, 907 F.2d at 531. Contradictory and conflicting testimony from the detective and the complainants does not show that the prosecutor knowingly used perjured testimony. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## B.    Excluded Evidence

Petitioner contends that one of the complainants testified about a cell phone despite a ruling prohibiting the mention of any item that the court previously suppressed, including cell phones. He also claims that the prosecutor knew that he brought the complainants into prostitution because that information was contained on a camcorder.

The court granted a motion to suppress evidence seized at the apartment, which included a camcorder and videotapes. (*See* doc. 19-3 at 33-34, 46.) The officers did not seize any cell phones.

(*See id*. at 24.)  Before trial, counsel made an oral motion in limine to prevent witnesses from testifying about the videotapes and any other items that were seized. (*See* doc. 19-5 at 5.)  The court stated that it had granted the motion to suppress, and ruled that no one was to refer to the search or to any items seized, although the officers could testify about the other things that they saw in the apartment. (*See id*. at 6.)  Defense counsel stated that he only wanted no mention of the items that were seized and suppressed, such as the camcorder, videotapes, and cell phones. (*See id*.)  The court agreed and granted the motion in limine. (*See id*. at 6-7.)

One of the complainants testified that after she engaged in sexual activity with customers, she called Petitioner with a cell phone that he bought for her. (*See id*. at 96-98.)  She also used the cell phone to call customers and to call Petitioner to let him know that she was with a customer. (*See id*. at 100.)  She testified about her use of the cell phone prior to the search, not that the cell phone was seized in the search, and she did not identify any particular cell phone.  Petitioner has not shown that she violated the court's order suppressing evidence or granting the motion in limine.

Regarding the camcorder, the detective testified that the complainants told him in an interview that they were brought into prostitution by Petitioner.  Petitioner has not shown that the police or the prosecutor were aware that Petitioner brought the complainants into prostitution because the police or prosecutor viewed the camcorder or videotapes.  He has not shown that the state court's rejection of this claim was unreasonable.

## C.    Extraneous Offense

Petitioner contends that the detective testified during the guilt phase about an extraneous offense when he testified that Petitioner used false information to obtain a Texas driver's license that had his brother's name and date of birth, and that he put his brother's information on the apartment lease. (*See id*. at 205-06, 211-12.)  During the sentencing phase, the prosecutor argued to the jury

13

that Petitioner used his brother's identification to fill out the lease because Petitioner was a convicted felon, and that he used his brother's good name to get an apartment and set up a brothel. (*See* doc. 19-6 at 42, 43.)

Evidentiary issues are matters of state law that are not subject to examination by the federal courts. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court may grant habeas relief on an evidentiary issue only if it violated a specific federal constitutional right or rendered the trial fundamentally unfair. *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).

"The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense." *Devoe v. State*, 354 S.W.3d 457, 459 (Tex. Crim. App. 2011). Extraneous offense evidence is admissible to prove "motive, opportunity, intent, preparation, plan knowledge, identify, or absence of mistake or accident." Tex. R. Evid. 404(b). Petitioner has not shown that the evidence violated state law, violated a constitutional right, or rendered his trial fundamentally unfair. He has not shown that the state court's rejection of this claim was unreasonable.

## VII.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14

14

(2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A.    <u>**Search Warrant**</u>

Petitioner contends that counsel failed to challenge the search warrant and a backdated affidavit in support of the search warrant, failed to request a *Franks* hearing, and allowed the court to sever the motion to suppress in the No. F08-62218 from the motion to suppress in the two child pornography cases, which resulted in the dismissal of those two cases.  Counsel also allegedly failed to file a motion to suppress in F10-00781.

The court held a suppression hearing at which it announced that it would hear the motions to suppress in the child pornography cases.  (*See* doc. 19-3 at 4.)  The apartment was searched without a warrant.  (*See id*. at 13.)  Among the items seized were a camcorder and videotapes.  (*See id*. at 13., 33)  A search warrant was obtained to view the videotapes after they were seized.  (*See id*. at 5.)  The court found that the warrantless search of Petitioner's apartment was unconstitutional because the police should have waited for a search warrant, (*see* doc. 19-3 at 46), and granted the motion to suppress evidence seized during the search in No. F08-62218, (*see* doc. 19-15 at 64).  The court held that the testimony of the minors would not be excluded as a product of the search in the compelling prostitution cases.  (*See id*. at 43, 45-46.)  There was no severance of the suppression motions, because the court also considered the search in the context of the compelling prostitution cases.

Because the court suppressed the evidence seized in the search of the apartment, i.e., the camcorder and videotapes, any complaint about the subsequent search warrant to view the videotapes and allegedly backdated supporting affidavit was moot, and there was no need for a *Franks* hearing on the warrant and affidavit.[4]  To the extent that the camcorder and videotapes may

---

[4]  A defendant may seek a hearing to challenge an affidavit in support of a warrant as having false and misleading information.  *See Franks v. Delaware*, 438 U.S. 154 (1978).

have been viewed as a result of search warrant, the camcorder and videotapes were suppressed and were not used at trial. Petitioner does not identify any evidence that was seized as a result of a search warrant and that was used at trial. He has not shown that the police learned anything from those items that were not learned from the complainants or other means of investigation. He has not shown that the state court's rejection of this claim was unreasonable.

**B.    Excluded Evidence**

Petitioner contends that counsel failed to object to the introduction of evidence that was previously excluded as a result of the suppression hearing and the ruling on the oral motion in limine. As discussed, no excluded evidence was used. Counsel was not ineffective for failing to raise a meritless or futile objection. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). He has not shown that the state court's rejection of this claim was unreasonable.

**C.    State's Burden of Proof**

Petitioner contends that counsel failed to hold the State to its burden of proof. He asserts that counsel failed to object to the prosecutor's statement in voir dire that "[w]hat we have to prove is that the defendant caused a person younger than 17 years old the exhibit [sic] prostitution." (*See* doc. 19-4 at 46). Counsel also failed to object to the prosecutor's statement in voir dire that it was not a defense if the child lied about her age and told the defendant that she was an adult. (*See id*. at 79.) He also claims that counsel failed to object when the prosecutor said that she was going to read the indictment, but did not. (*See* doc. 19-5 at 7-8.)

Immediately after the statement regarding causing a person younger than seventeen years

old "the exhibit prostitution," the prosecutor said, "But let's kind of talk about what that means. Cause a person younger than 17 years of age to commit prostitution."  (*See* doc. 19-4 at 46.) Petitioner was not prejudiced by counsel's failure to object.  The court correctly informed the jury in voir dire and in the jury instructions that the element of the offense was that the defendant caused a person younger than seventeen years old "to commit prostitution."  (*See* docs. 19-4 at 15; 19-1 at 40; 19-15 at 66.)

Regarding the reading of the indictment, after the prosecutor stated that she was going to read the indictment, the record parenthetically states twice that the defendant was arraigned in the presence of the jury.  (*See* doc. 19-5 at 7, 8.)  After each arraignment, the court asked how Petitioner pled to the indictment.  (*See id*.)  He has not shown that the indictments were not read aloud as part of the arraignments.  Counsel was not ineffective for failing to raise a meritless objection.  *See Kimler*, 167 F.3d at 893; *Koch*, 907 F.2d at 527.

The prosecutor told the jury in voir dire that the State did not have to prove that Petitioner knew that the complainants were under the age of 17, and that a defendant's mistake of fact about the complainants' ages was not a defense, even if they lied about their ages.  (*See* doc. 19-4 at 74, 78, 79.)

When the offenses occurred in 2008, the compelling prostitution statute (Tex. Penal Code § 43.05(a)(2)) provided that "[a] person commits an offense if he knowingly ... causes by any means a person younger than 17 years to commit prostitution."  *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, art. 1, § 1.01, 1993 Tex. Gen. Laws 3586, 3681.  The statute was amended effective September 1, 2009, to provide that "[a] person commits an offense if the person knowingly ... causes by any means a child younger than 18 years to commit prostitution, *regardless of whether the actor knows the age of the child at the time the actor commits the offense*."  *See* Act of June 19, 2009, 81st

18

Leg., R.S., ch. 1002, § 9, 2009 Tex. Gen. Laws 2611, 2616 (emphasis added). Petitioner argues that because of the addition of the highlighted portion of the statute in 2009, the statute required that the actor knew the age of the child at the time of the offense when he committed the offense in 2008.

Petitioner does not provide any case law supporting his theory of the offense before the 2009 amendment, and it does not appear that any such case law existed at the time of his trial. The Texas Court of Criminal Appeals has traced the history of criminal statutes that are based on the age of the child-victim and discussed how those statutes have been construed to provide for strict-liability regarding the child's age to protect children. *See Fleming v. State*, 455 S.W.3d 557, 580-83 (Tex. Crim. App. 2014) (holding that such strict-liability is not unconstitutional); *see also Aguirre v. State*, 22 S.W.3d 463, 475 (Tex. Crim. App. 1999) (Court of Criminal Appeals's decisions reflect tradition by finding that statutes impose strict liability as to the element of a child's age in statutes that protect children). The Court of Criminal Appeals has long held that mistake of fact regarding a child victim's age is not a defense to sex offenses. *Ex parte Burns*, No. WR-69,222-03, 2012 WL 243686, at *4 (Tex. Crim. App. 2012) (Cochran, J., conc. op.). Counsel could have reasonably concluded that in light of unsettled law and the Court of Criminal Appeals's historical strict-liability construction of statutes involving crimes against children, the State did not need to prove that Petitioner knew the victim's age.

Because the law on the matter was unsettled at the time of trial, Petitioner has not shown that counsel's performance was deficient and that the state court unreasonably rejected his claim. *See Givens v. Cockrell*, 265 F.3d 306, 309 (5th Cir. 2001) (because the law was unsettled, counsel could have reasonably believed that an objection to evidence would have been meritless).

## D.    Perjury

Petitioner contends that counsel failed to object or impeach the detective for committing

perjury.  As discussed, he has not shown that the detective committed perjury.  Moreover, counsel cross-examined the detective at length and sought to create doubt about the complainants' identification of Petitioner's photo and whether they knew his name when they wrote it on the photos. (*See* doc. 19-5 at 198-200, 206-08.)  Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## E.    <u>Complainants' Testimony</u>

Petitioner contends that counsel failed to challenge the complainants' testimony.  Counsel cross-examined the complainants about their testimony, their statements to the police, and their identification of Petitioner.  (*See id*. at 32-47, 217-33.)   Petitioner has not shown counsel's performance in cross-examining the complainants was deficient.  He has not shown that the state court's rejection of this claim was unreasonable.

## F.    <u>Communication</u>

Petitioner contends that counsel failed to communicate with him in preparation for the trial. In response to the state habeas applications, counsel submitted an affidavit.  It stated that he and his investigator met with Petitioner "numerous times."   (*See* doc. 19-43 at 4.)  He explained the substance of his discussions with Petitioner about the case and the law as applied to the facts.  He negotiated a plea agreement for eight years' imprisonment, but Petitioner refused the plea offer.  The state habeas court found that counsel was credible.  (*See id*. at 2.)  Petitioner has not shown that counsel failed to communicate with him before trial or that the state court's rejection of this claim was unreasonable.

## G.    <u>Indictment</u>

Petitioner contends that counsel failed to challenge the indictment.  As discussed, Petitioenr

has not shown that the indictment was defective.  Counsel was not ineffective for failing to raise a meritless or futile objection or motion.  *See Kimler*, 167 F.3d at 893; *see also Koch*, 907 F.2d at 527. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## H.    <u>Presentation of Witnesses</u>

Petitioner contends that counsel failed to present witnesses.

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative.  *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009).  To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have testified, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Id*.

Movant has not identified any potential witnesses that counsel should have called or stated what their testimony would have been.  He is not entitled to relief on this conclusory claim.  *See Woods*, 870 F.2d at 288 n.3.  He has not shown that the state court's rejection of this claim was unreasonable.

## VIII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*, and the movant must show a reasonable probability that he would have prevailed on his appeal but for counsel's deficient representation.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner contends that appellate counsel failed to raise issues about the denial of a jury shuffle, the defective indictment, the detective's perjury, and the severance of the motion to suppress. Petitioner did not object to any of these matters at trial, and appellate review would have been barred by the contemporaneous objection rule, as discussed. Moreover, he has not shown that his issues had merit, as discussed. Appellate counsel had no duty to raise meritless issues on appeal. He has not shown that the state court's rejection of these claims was unreasonable.

## IX.  SUFFICIENCY OF EVIDENCE

Petitioner appears to contend that the evidence was insufficient to show that he knew that the complainants were under seventeen years of age. (*See* doc. 4 at 38-39.) He asserts that the prosecutor knew that the camcorder showed that the complainants told him they were eighteen years old. (*See id*. at 39.)

Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex.

Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing that this is a long-standing legal principle under Texas law).

Although Petitioner raised a claim of insufficient evidence on direct appeal, he did not assert that the evidence was insufficient to show that he knew the ages of the complainants. To the extent that he raised the claim on state habeas, the Court of Criminal Appeals denied his habeas applications without written order. That decision was an adjudication on the merits. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). When the Court of Criminal Appeals denies a state application for writ of habeas corpus without written order, it implicitly denies sufficiency claims on the procedural basis that such claims are not cognizable on state habeas review. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

Petitioner has procedurally defaulted any claim of insufficiency of the evidence regarding his knowledge of the complainants' age under Texas law. This default constitutes an adequate and independent state procedural ground to bar federal habeas review of the claim. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (citing *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004), and *Ex parte Grigsby*, 137 S.W.3d at 674). The claim is therefore procedurally barred unless Petitioner shows cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000). He has not shown cause and prejudice, and he has not shown a fundamental miscarriage of justice or actual innocence.

Petitioner has also not shown that his claim has merit. Federal courts conduct an extremely

23

limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir.1999).

Even if the State had to prove that Petitioner knew that the complainants were under seventeen years old, there was testimony that the complainants appeared to be about fifteen or sixteen years old when the police saw them in the apartment. The jury could have concluded beyond a reasonable doubt that the Petitioner knew that they were under seventeen years old based on their appearance.

To the extent that Petitioner is challenging the state appellate court's determination that the evidence was sufficient, that claim also lacks merit. The state appellate court held that the evidence was sufficient based on testimony that Petitioner instructed the complainants about how to engage in prostitution, he provided for them, he placed ads for them, he took them to and from areas to seek

24

clients, and he collected the money they earned.  Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## X.  *BRADY*

Respondent asserts that it appears that Petitioner may be raising a *Brady* claim.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment.  "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed.  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

Any *Brady* claim lacks merit.  The camcorder was the subject of a motion to suppress, so counsel was aware of the camcorder.  Petitioner does not allege that the defense was unaware that the complainants stated that they were eighteen years old on the camcorder or videotapes.  He acknowledges that the complainants testified that they told him that they were eighteen.  (*See* doc. 4 at 39.)  Because that information was known to the defense, he has not shown that there was a *Brady* violation.  *See Lawrence*, 42 F.3d at 257.

## XI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state

court records, an evidentiary hearing appears unnecessary.  Petitioner has not shown he is entitled to an evidentiary hearing.

## XII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 27th day of July, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE